**CALIFORNIA CONSUMER ATTORNEYS, P.C.**
Michael H. Rosenstein (SBN 169091)
mhr@calattorneys.com
Sepehr Daghighian (SBN 239349)
sd@calattorneys.com
Alastair F. Hamblin (SBN 282044)
afh@calattorneys.com
10866 Wilshire Blvd, Suite 1200
Los Angeles, CA 90024
Telephone: (310) 872-2600
Facsimile: (310) 730-7377

Attorneys for Plaintiff,
**KIERRA THOMAS**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KIERRA THOMAS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>NISSAN NORTH AMERICA, INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br><br>Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>1. **VIOLATION OF SONG-BEVERLY ACT - BREACH OF EXPRESS WARRANTY**<br>2. **VIOLATION OF SONG-BEVERLY ACT - BREACH OF IMPLIED WARRANTY**<br>3. **VIOLATION OF THE SONG-BEVERLY ACT SECTION 1793.2(b)** |

Plaintiff, KIERRA THOMAS, alleges as follows against Defendants NISSAN NORTH AMERICA, INC. ("NNA"), and DOES 1 through 10 inclusive, on information and belief, formed after a reasonable inquiry under the circumstances:

## DEMAND FOR JURY TRIAL

1.    Plaintiff, KIERRA THOMAS, hereby demands trial by jury in this action.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1332 *et seq.,* because amount of recovery sought by Plaintiff exceeds the jurisdictional amount of $75,000.00, and there is complete diversity amongst the parties.

3.  The Subject Vehicle, as reflected in the lease contract, has an approximate value of $33,745. (**Exhibit "A"**) Pursuant to the Song-Berverly Act, Plaintiff is seeking general, special, and actual damages, as well as civil penalties, up to two times the amount of actual damage. As such, Plaintiff seeks in the approximate amount of $101,235. Plaintiff is also seeking reasonable attorneys' fees under the Act. Accordingly, Plaintiff claims meets the jurisdictional threshold required under 28 U.S.C. § 1332 (a).

4.  Complete diversity exists as Plaintiff, KIERRA THOMAS, is citizen of the State of California.

5. With respect to Defendant, NNA, the citizenship of a corporation for diversity jurisdiction purposes is determined by examining the "nerve center" of the company. *Hertz Corp. v. Friend,* 559 U.S. 77 (2010). Under *Hertz'* "nerve center" test, for diversity jurisdiction purposes a corporation's principal place of business "refer[s] to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. In *Hertz,* the Court explained that the principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control,

1  and coordination, i.e., the 'nerve center.'" *Id.  See, also: Harris v. Rand*, 682 F.3d 846,
2  851 (9th Cir. 2012)

3      6.  According to NNA's Statement of Information, filed with the California
4  Secretary of State, NNA is a Delaware Corporation, which has a Tennessee mailing
5  address, and whose principal executive office has a street address in Tennessee.
6  (Exhibit "B").  Also, the address listed on the Statement of Information for NNA's
7  Chief Executive Officer, Secretary, and Chief Financial Office is the same: One Nissan
8  Way, Franklin, Tennessee 37067.  (*Id.*)

9      7.  Finally, NNA's website confirms that its principal place of business and
10  nerve center are in Tennessee, stating: "Nissan first came to the United States to sell
11  vehicles in 1958 and began importing and making Datsun vehicles in the United States
12  under the Nissan Motor Corporation in U.S.A. (NMC) name in 1960. In 1990, Nissan
13  North America, Inc. (NNA) was created to coordinate all of Nissan's various activities
14  in North America. In 1998, the two organizations merged operations under the Nissan
15  North America, Inc. name. Nissan realigned its geographic structure globally in 2021
16  and Nissan North America, Inc. became a part of Nissan Americas, which combines
17  the North and South America operations. **Headquartered in Franklin, Tennessee,**
18  **Nissan North America, Inc.** has expertise across the region in research and
19  development, vehicle exports, automotive design, engineering, consumer and
20  corporate financing, sales and marketing, distribution and manufacturing." (Exhibit
21  "C") (emphasis added).

22      8.  Accordingly, there is complete diversity amongst the parties under 28 U.S.C.
23  § 1332. (a) (1), as Plaintiff has now alleged sufficient facts to establish subject matter
24  jurisdiction.

25      9.  Venue is proper in, and Defendants are subject to the personal jurisdiction
26  of, this court because the Subject Vehicle was purchased at Nissan of Tustin, a NNA
27  authorized dealership and repair facility, located in Tustin, California.
28  / / /

COMPLAINT

10. Venue is also proper, as Plaintiff, KIERRA THOMAS, is an individual residing in the City of Irvine, State of California.

11. Venue is also proper, as Defendant, NNA, is and was a Delaware Limited Liability Company operating and doing business in the State of California.

## GENERAL ALLEGATIONS

12. Plaintiff, KIERRA THOMAS, is an individual residing in the City of Irvine, State of California.

13. Defendant NNA is and was a Delaware Corporation operating and doing business in the State of California.

14. These causes of action arise out of the warranty obligations of NNA in connection with a vehicle purchased by Plaintiff and for which NNA issued a written warranty.

15. Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise of Defendant issued herein as Does 1 through 10, inclusive, under the provisions of section 474 of the California Code of Civil Procedure. Defendant Does 1 through 10, inclusive, are in some manner responsible for the acts, occurrences and transactions set forth herein, and are legally liable to Plaintiff. Plaintiff will seek leave to amend this Complaint to set forth the true names and capacities of the fictitiously named Defendant, together with appropriate charging allegations, when ascertained.

16. All acts of corporate employees as alleged were authorized or ratified by an officer, director, or managing agent of the corporate employer.

17. Each Defendant, whether actually or fictitiously named herein, was the principal, agent (actual or ostensible), or employee of each other Defendant, and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each Defendant is liable to Plaintiff for the relief prayed for herein.

/ / /

COMPLAINT

18.    On October 20, 2021, Plaintiff leased a new 2021 Nissan Rouge, having VIN No. 5N1AT3AA9MC810733 ("the Subject Vehicle"). Express warranties accompanied the sale of the Subject Vehicle to Plaintiff by which NNA undertook to preserve or maintain the utility or performance of Plaintiff's vehicle or to provide compensation if there was a failure in such utility or performance.

19.    The Subject Vehicle was delivered to Plaintiff with serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty including, but not limited to, the serious, dangerous, and unfixable transmission defects.

20.    The Subject Vehicle sold to Plaintiff was backed by NNA's Vehicle Limited Warranty ("Warranty"), by which NNA undertook to preserve or maintain the utility or performance of the Subject Vehicle or provide compensation if there was a failure in such utility or performance. The Warranty covers any repairs needed to correct defects in materials or workmanship of covered parts. The basic coverage period lasts 36 months or 36,000 miles, whichever comes first, and the powertrain coverage lasts 60 months or 60,000 miles, whichever comes first. The powertrain coverage specifically applies to the engine, transmission and transaxle, drivetrain, and restraint system. The Warranty assured consumers that NNA would repair any defect in materials or workmanship under normal use.

21.    Plaintiff hereby revokes acceptance of the sales contract.

22.    Pursuant to the Song-Beverly Consumer Warranty Act (herein after the "Act") Civil Code sections 1790 *et seq.* the Subject Vehicle constitutes "consumer goods" used primarily for family or household purposes, and Plaintiff has used the vehicle primarily for those purposes.

23.    Plaintiff is a "buyer" of consumer goods under the Act.

24.    Defendant NNA is a "manufacturer" and/or "distributor" under the Act.

25.    To the extent that one or more class action lawsuits have been filed or are filed with respect to the nonconformities affecting Plaintiff's vehicle, without

1  conceding the necessity of supplying such notice, Plaintiff hereby provides notice to
2  Defendant and/or Defendant's agents of Plaintiff's intent to opt-out and be excluded
3  from the settlement class of said class action lawsuit(s).

4       26.    Plaintiff hereby demands trial by jury in this action.

5              **REPAIR HISTORY OF THE SUBJECT VEHICLE**

6       27.    The following is a summary of some pertinent portions of the repair visits
7  for the Subject Vehicle.

8       28.    On October 30, 2021, with approximately 608 miles on the odometer,
9  Plaintiff presented the Subject Vehicle to Defendant's authorized repair facility,
10 Nissan of Tustin, and reported that the Subject Vehicle had a defective rear hatch
11 sensor wherein the sensor would indicate the hatch was open despite being closed.
12 Defendant's authorized technician verified the defects, and a new rear hatch was
13 specially ordered. The inspection and repairs were performed under the warranty
14 issued by NNA The Subject Vehicle was out of service for approximately three (3)
15 days during this repair attempt.

16      29.    On November 15, 2021, with approximately 1,519 miles on the
17 odometer, Plaintiff presented the Subject Vehicle to Defendant's authorized repair
18 facility, Nissan of Tustin, and reported that the Subject Vehicle was displaying an
19 engine malfunction – power reduced alert. Defendant's technician proceeded to
20 inspect Plaintiff's concerns; however, they did not verify any of Plaintiff's concerns
21 and claimed that no repairs were necessary. Although the Defendant's technician
22 claimed that the Subject Vehicle possessed no nonconformities, Plaintiff's concerns
23 were not properly addressed and have persisted throughout their ownership. The
24 inspection was performed under the warranty issued by NNA. The Subject Vehicle
25 was out of service for approximately one (1) day during this repair attempt.

26      30.    On November 22, 2021, with approximately 1,974 miles on the
27 odometer, Plaintiff presented the Subject Vehicle to Defendant's authorized repair
28 facility, Nissan of Tustin, and reported an engine malfunction/ikey error/power loss.

COMPLAINT

Upon inspections, Defendant's authorized technician verified the defects determined the rear door lock switch had play which caused the message to appear. To address Plaintiff's concern, Defendant's authorized technician removed and replaced the rear hatch door lock assembly. Despite the alleged determination from Defendant's technician, Plaintiff's concerns have continued to persist throughout their ownership. The inspection and repairs were performed under the warranty issued by NNA The Subject Vehicle was out of service for approximately eight (8) days during this repair attempt.

31. On January 11, 2022, with approximately 5,004 miles on the odometer, Plaintiff presented the Subject Vehicle to Defendant's authorized repair facility, Nissan of Tustin, and reported the infotainment display will go black. Upon inspections, Defendant's authorized technician found a new software update available for the Subject Vehicle. To address Plaintiff's concern, Defendant's authorized technician installed the new software. Despite the alleged determination from Defendant's technician, Plaintiff's concerns have continued to persist throughout their ownership. The inspection and repairs were performed under the warranty issued by NNA The Subject Vehicle was out of service for approximately five (5) days during this repair attempt.

32. On February 16, 2022, with approximately 7,984 miles on the odometer, Plaintiff presented the Subject Vehicle to Defendant's authorized repair facility, Nissan of Tustin, and reported the Subject Vehicle was displaying an engine malfunction – power reduced alert. Upon inspections, Defendant's authorized verified the defects and found that the vehicle required a new Electronic Control Module. To address Plaintiff's concern, Defendant's authorized technician installed and programmed a new Electronic Control Module. Despite the alleged determination from Defendant's technician, Plaintiff's concerns have continued to persist throughout their ownership. The inspection and repairs were performed under the warranty issued by NNA The Subject Vehicle was out of service for approximately thirteen (13) days

COMPLAINT

during this repair attempt.

33.    On June 16, 2022, with approximately 16,864 miles on the odometer, Plaintiff presented the Subject Vehicle to Defendant's authorized repair facility, Nissan of Tustin, and reported the Subject Vehicle's radio screen was going blank. Upon inspections, Defendant's technician proceeded to inspect Plaintiff's concerns; however, they did not verify any of Plaintiff's concerns; however, Defendant's technician researched and found similar examples of the similar defects with other vehicles. To address Plaintiff's concern, Defendant's authorized technician erased the vehicle's Bluetooth memory and reconnected the Bluetooth. Despite the alleged determination from Defendant's technician, Plaintiff's concerns have continued to persist throughout their ownership. The inspection and repairs were performed under the warranty issued by NNA The Subject Vehicle was out of service for approximately one (1) day during this repair attempt.

34.    Despite Plaintiff's repeated attempts at informing NNA's authorized repair facility of the rear hatch sensor defect, infotainment system defect, and Electronic Control Module defect, none of the repair attempts successfully repaired the Subject Vehicle, including its other ongoing defects. Thus, Defendant has failed to properly conform the Subject Vehicle to warranty as explicitly entailed in the Act.

35.    Defendant was under an affirmative duty under the Song-Beverly Consumer Warranty Act to promptly offer to repurchase or replace the Subject Vehicle as soon as it failed to conform the Subject Vehicle to the terms of the express warranty after a reasonable number of repair attempts.

36.    Despite having no obligation to do so, prior to filing this lawsuit, Plaintiff contacted Defendant directly and requested a repurchase of the Subject Vehicle due to the ongoing issues that Defendant and its authorized repair facilities could not repair to conform the vehicle to the terms of its written warranties within a reasonable number of repair opportunities. Defendant denied Plaintiff's request.[1]

---

[1] "A manufacturer's duty to replace a vehicle does not depend on a consumer's request, but instead arises as soon as the manufacturer fails to comply with the warranty within

## FIRST CAUSE OF ACTION

### Violation of the Song-Beverly Act – Breach of Express Warranty

16.     Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

17.     Express warranties accompanied the sale of the vehicle to Plaintiff by which NNA undertook to preserve or maintain the utility or performance of Plaintiff's vehicle or to provide compensation if there was a failure in such utility or performance.

18.     The Subject Vehicle was delivered to Plaintiff with serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty.

19.     Pursuant to the Song-Beverly Consumer Warranty Act (herein after the "Act") Civil Code sections 1790 *et seq.* the vehicle constitutes "consumer goods" used primarily for family or household purposes, and Plaintiff has used the Subject Vehicle primarily for those purposes.

20.     Plaintiff is the "buyer" of consumer goods under the Act.

21.     Defendant NNA is a "manufacturer" and/or "distributor" under the Act.

22.     The foregoing defects and nonconformities to warranty manifested themselves in the Subject Vehicle within the applicable express warranty period. The nonconformities substantially impair the use, value and/or safety of the vehicle.

23.     Plaintiff delivered the vehicle to an authorized NNA repair facility for repair of the nonconformities.

24.     Defendant was unable to conform Plaintiff's vehicle to the applicable express after a reasonable number of repair attempts.

---

a reasonable time. *Krotin v. Porsche Cars North America, Inc.*, 38 Cal.App.4th 294, 301-302 (1995). *Krotin* court noted that "[a]n automobile manufacturer need not read minds to determine which vehicles are defective; it need only read dealers' services records." *Id.* at 303.

25.    Notwithstanding Plaintiff's entitlement, Defendant NNA has failed to either promptly replace the new motor vehicle or to promptly make restitution in accordance with the Song-Beverly Act.

26.    By failure of Defendant to remedy the defects as alleged above, or to issue a refund or replacement vehicle, Defendant is in breach of its obligations under the Song-Beverly Act.

27.    Under the Act, Plaintiff is entitled to reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiff prior to the first presentation of the nonconformities.

28.    Plaintiff is entitled to all incidental, consequential, and general damages resulting from Defendant's failure to comply with its obligations under the Song-Beverly Act.

29.    Plaintiff is entitled under the Song-Beverly Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action.

30.    Because Defendant willfully violated the Song-Beverly Act, Plaintiff is entitled in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages for NNA's willful failure to comply with its responsibilities under the Act.

## SECOND CAUSE OF ACTION

### Violation of the Song-Beverly Act – Breach of Implied Warranty

31.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

32.    NNA and its authorized dealership at which Plaintiff purchased the Subject Vehicle had reason to know the purpose of the Subject Vehicle at the time of sale of the Subject Vehicle.  The sale of the Subject Vehicle was accompanied by

implied warranties provided for under the law.

33.    Among other warranties, the sale of the Subject Vehicle was accompanied by an implied warranty that the Subject Vehicle was merchantable pursuant to Civil Code section 1792.

34.    The Subject Vehicle was not fit for the ordinary purpose for which such goods are used because it was equipped with one or more defective vehicle systems/components.

35.    The Subject Vehicle did not measure up to the promises or facts stated on the container or label because it was equipped with one or more defective vehicle systems/components.

36.    The Subject Vehicle was not of the same quality as those generally acceptable in the trade because it was sold with one or more defective vehicle systems/components.

37.    Upon information and belief, the defective vehicle systems and components were present at the time of sale of the Subject Vehicle; thus, extending the duration of any implied warranty under *Mexia v. Rinker Boat Co., Inc.* (2009) 174 Cal.App.4th 1297, 1304–1305 and other applicable laws.

38.    Plaintiff is entitled to justifiably revoke acceptance of the Subject Vehicle under Civil Code, section 1794, *et seq*;

39.    Plaintiff hereby revokes acceptance of the Subject Vehicle.

40.    Plaintiff is entitled to replacement or reimbursement pursuant to Civil Code, section 1794, *et seq.*

41.    Plaintiff is entitled to rescission of the contract pursuant to Civil Code, section 1794, *et seq.* and Commercial Code, section 2711.

42.    Plaintiff is entitled to recover any incidental, consequential, and/or "cover" damages under Commercial Code, sections 2711, 2712, and Civil Code, section 1794, *et seq.*

/ / /

## THIRD CAUSE OF ACTION

### Violation of the Song-Beverly Act Section 1793.2(b)

43.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

44.    Pursuant to Civil Code, section 1793.2, subdivision (a) a manufacturer that sells consumer goods in California, for which it has made an express warranty, shall maintain service and repair facilities or designate and authorize independent service and repair facilities to carry out the terms of those warranties.

45.    Pursuant to Civil Code, section 1793.2, subdivision (b), when service and repair of goods is necessary because they do not conform with the applicable express warranties, service and repair shall be commenced within a reasonable time by the manufacturer or its representative.

46.    Civil Code, section 1793.2, subdivision (b) further states that goods shall be serviced or repaired so as to conform to the applicable warranties within 30 days and/or within a reasonable time.

47.    The sale of the Subject Vehicle was accompanied by express warranties, including a warranty guaranteeing that the Subject Vehicle was safe to drive and not equipped with defective parts, including the electrical system.

48.    Plaintiff delivered the Subject Vehicle to NNA's authorized service representatives on multiple occasions. The Subject Vehicle was delivered for repairs of defects, which amount to a nonconformities to the express warranties that accompanied the sale of the Subject Vehicle.

49.    Defendant's authorized facilities did not conform the Subject Vehicle to warranty within 30-days and/or commence repairs within a reasonable time and NNA has failed to tender the Subject Vehicle back to Plaintiff in conformance with its warranties within the timeframes set forth in Civil Code section 1793.2(b).

/ / /

50.    Plaintiff is entitled to justifiably revoke acceptance of the Subject Vehicle under Civil Code, section 1794, *et seq*;

51.    Plaintiff hereby revokes acceptance of the Subject Vehicle.

52.    Plaintiff is entitled to replacement or reimbursement pursuant to Civil Code, section 1794, *et seq.*

53.    Plaintiff is entitled to rescission of the contract pursuant to Civil Code section 1794, *et seq.* and Commercial Code, section 2711.

54.    Plaintiff is entitled to recover any "cover" damages under Commercial Code sections 2711, 2712, and Civil Code, section 1794, *et seq.*

55.    Plaintiff is entitled to recover all incidental and consequential damages pursuant to 1794 *et seq* and Commercial Code sections, 2711, 2712, and 2713 *et seq.*

56.    Plaintiff is entitled in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages in that NNA has willfully failed to comply with its responsibilities under the Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.    For general, special and actual damages according to proof at trial in excess of $75,000;

2.    For rescission of the purchase contract and restitution of all monies expended;

3.    For diminution in value;

4.    For incidental and consequential damages according to proof at trial;

5.    For civil penalty in the amount of two times Plaintiff's actual damages;

6.    For prejudgment interest at the legal rate;

7.    For reasonable attorney's fees and costs and expenses of suit; and

/ / /

/ / /

/ / /

8.    For such other and further relief as the Court deems just and proper under the circumstances.

Dated:  <u>January 26, 2023</u>    **CALIFORNIA CONSUMER ATTORNEYS, P.C.**

<u> /s/ *Sepehr Daghighian*    </u>
Michael H. Rosenstein, Esq.
Sepehr Daghighian, Esq.
Alastair F. Hamblin, Esq.
Attorneys for Plaintiff,
**KIERRA THOMAS**

Plaintiff, **KIERRA THOMAS**, hereby demands trial by jury in this action.